UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 16-240-DLB

HUNTER LAFAYETTE BOWDEN                                          PLAINTIFF

vs.                          **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                 DEFENDANT

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

        Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review

of an administrative decision of the Commissioner of Social Security, challenging the

Commissioner's determination that his benefits should be reduced by one-third.  The

Court, having reviewed the record and the parties' dispositive motions, and for the

reasons set forth herein, hereby affirms the decision of the Commissioner.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

        Plaintiff Hunter Lafayette Bowden is a young man with an intellectual disability and

Non-Mosaic Down's Syndrome, who resides in Versailles, Kentucky.  (Tr. 10, 13).  On

October 2, 2013, the Plaintiff, through his guardian/mother, protectively applied for

Supplemental Security Income ("SSI"), alleging disability beginning July 15, 1995 – the

day he was born.  (Tr. 17-21, 22-23).  Presumptive SSI payments began in October 2013,

and the Plaintiff was formally awarded benefits upon initial consideration on March 7,

2014.  (Tr. 24).  However, on May 8, 2014, the Commissioner determined that pursuant

to the Social Security Administration's income regulations, the Plaintiff's monthly benefit

would be reduced by one-third because he received food and shelter from his parents while living in their homes.  (Tr. 33-40).  This reduction was upheld on reconsideration. (Tr. 66-68).

At the Plaintiff's request, an administrative hearing was conducted on July 22, 2015, before Administrative Law Judge ("ALJ") Karen R. Jackson.  (Tr. 135-151).  On September 25, 2015, ALJ Jackson issued an unfavorable decision, finding that the one-third reduction of Plaintiff's benefits was appropriate.  (Tr. 13-16).  This decision became final on May 3, 2016, after the Appeals Council considered additional evidence provided by the Plaintiff and denied Plaintiff's request for review.  (Tr. 4-8).  Having exhausted his administrative remedies, the Plaintiff filed the instant action on June 30, 2016.  (Doc. # 1).  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. # 10, 15, and 18).

At first glance, this case appears to raise an issue of first impression.  Namely, should this Court join the Seventh Circuit,[1] Second Circuit,[2] and the Eastern District of Virginia[3] and prohibit the Commissioner from imputing "unearned income" and reducing an SSI recipient's benefits because he rents shelter from a related-landlord below fair market value?

However, an understanding of the complex regulatory framework, when applied to the particular facts of this case, reveals that this case does not present the same issue that was before the Seventh Circuit, Second Circuit, or the Eastern District of Virginia. Therefore, this matter is much simpler and the questions presented are these: First, is the

---

[1]    *Jackson v. Schweiker*, 683 F.2d 1076, 1086 (7th Cir. 1982)
[2]    *Ruppert v. Bowen*, 871 F.2d 1172, 1180 (2d Cir. 1989)
[3]    *Ragsdale v. Apfel*, 999 F. Supp. 814 (E.D. Va. 1998).

Commissioner's application of the one-third reduction rule supported by substantial evidence? Second, is the Commissioner's regulation entitled to *Chevron* deference? Third, is the Commissioner's interpretation of its regulation entitled to *Auer* deference? Fourth, regardless of whether the interpretations are permissible, is the Commissioner's application of the one-third reduction rule in this context arbitrary and capricious? And finally, has the Commissioner violated the Plaintiff's constitutional rights?

Before any of these questions can be answered, the Court must provide context. Accordingly, the Court will first explain the complicated regulatory framework. Then, the Court will discuss the Commissioner's decision and address the merits of the Plaintiff's arguments.

## II. APPLICABLE REGULATIONS

### A. Overview of the Regulatory Framework

Title XVI of the Social Security Act, which authorizes the SSI program, provides benefits to the elderly, blind, or disabled who meet certain statutory income and resource limitations. 42 U.S.C. §§ 1381-1382b. Generally speaking, as a person's income increases, his benefits are reduced until his income reaches a threshold point, making him ineligible for SSI benefits. 20 C.F.R. § 416.1100. Congress defined "income" to include "both earned income and unearned income," and defined "unearned income" to include "support and maintenance furnished in cash or kind." 42 U.S.C. § 1382a(a)(2).

#### 1. *In-Kind Support and Maintenance as "Unearned Income"*

The Social Security Administration has promulgated regulations that explain in-kind support and maintenance and establish "special rules for valuing food or shelter that is received as unearned income (in-kind support and maintenance)." 20 C.F.R. §

416.1130(a). Specifically, "in-kind support and maintenance means any food or shelter that is given to [a claimant] or that [the claimant] receive[d] because someone else pay[ed] for it." 20 C.F.R. § 416.1130(b). Under the regulations, "[s]helter includes room, rent, mortgage payments, real property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection services." *Id*.

However, a claimant is "not receiving in-kind support and maintenance in the form of room or rent if" the claimant pays rent "under a business arrangement." *Id*. Pursuant to the regulations, the existence of a "business arrangement" varies depending on the state in which the claimant resides. In the majority of the United States, a "business arrangement exists when the amount of monthly rent required to be paid equals the current market rental value." *Id*. Thus, if a claimant pays rent, but that rent falls below the current market value, he is receiving "unearned income" which may affect his SSI eligibility or the amount of his benefits. However, in other states (Illinois, Indiana, Wisconsin, New York, Connecticut, Vermont, and Texas),[4] a "business arrangement exists when the amount of monthly rent required to be paid equals or exceeds the presumed maximum value."[5] *Id*.; *see also* POMS SI 00835.380(B)(7). Under this rule, if a claimant's rent reaches a certain level, even though below the current market value, the claimant has not received "unearned income."[6]

---

[4]    The explanation for this state-by-state distinction is discussed later in this Memorandum Opinion and Order. *See infra* note 9.

[5]    The presumed "maximum value is one-third of [a recipient's] Federal benefit rate plus the amount of the general income exclusion described in [20 C.F.R.] § 416.1124(c)(12)." 20 C.F.R. § 416.1140(a)(1).

[6]    But, if the claimant's rent "is less than the presumed maximum value," the Commissioner will "impute as in-kind support and maintenance, the difference between the required amount of rent and either the presumed value or the current market value, whichever is less." 20 C.F.R. § 416.1130(b).

Once a claimant is found to be receiving "unearned income" in the form of in-kind support and maintenance, the Commissioner must value the unearned income received. There are "two rules for valuing" in-kind support and maintenance: the one-third reduction rule and the presumed value rule. 20 C.F.R. § 416.1130(c). The one-third reduction rule applies if the claimant lives "in the household of a person who provides … both food and shelter." *Id.* Therefore, for the Commissioner to apply the one-third reduction rule, three criteria must be established: (1) the recipient must live in another person's household, (2) the recipient must receive food from the person in whose household he is living, and (3) the recipient must receive shelter from the person in whose household he is living. 20 C.F.R. §§ 416.1131(a)(1)-(2). "[I]n all other situations where [the claimant is] receiving in-kind support and maintenance," the presumed value rule applies. *Id.*

### a. Presumed Value Rule

The presumed value rule is applied if any of the one-third reduction requirements are not satisfied (*i.e.*, if the claimant lives in his own household *or* if he does not receive both food *and* shelter from the person in whose household he is living). 20 C.F.R. §§ 416.1131; 20 C.F.R. § 416.1140. Under this valuation method, "[i]nstead of determining the actual dollar value of any food or shelter [the claimant] receive[s]," the Commissioner will "presume that it is worth a maximum value." 20 C.F.R. § 1140(a)(1). However, the claimant has the opportunity to rebut the "presumed value" presumption. 20 C.F.R. § 416.1140(a)(2). If the claimant can show that his "in-kind support and maintenance is not equal to the presumed value," the Commissioner will impute "the actual [lesser] amount" of unearned income received and reduce his benefits by that amount instead. 20 C.F.R. §§ 416.1140(a)(2), (b)(2).

### b. One-Third Reduction Rule

If the one-third reduction rule applies, the claimant's benefits will be automatically reduced by one-third, regardless of the actual value of the in-kind support and maintenance received. 20 C.F.R. §§ 416.1131(b)-(c). The Commissioner applies the one-third reduction rule "in full or not at all;" thus, the claimant does not have the opportunity to challenge or rebut the amount of the reduction. 20 C.F.R. § 416.1131(b). Instead, the claimant would have to disprove the existence of one of the one-third rule requirements – that he lives in his "own household" or that he does not receive both food and shelter from the person in whose household he is living. 20 C.F.R. §§ 416.1131(a)(1)-(2).

Whether the claimant lives in "another person's household" or his "own household" is dictated by another regulation. *See* 20 C.F.R. § 416.1132. Put simply, a claimant can reside with another person, but still live in his "own household." There are five ways that a claimant can prove that he lives in his "own household": (1) the claimant has "an ownership interest or a life estate interest in the home;" (2) the claimant is "liable to the landlord for payment of any part of the rental charges;" (3) the claimant lives "in a noninstitutional care situation;" (4) the claimant pays "at least a pro rata share of household and operating expenses;" or (5) "[a]ll members of the household receive public income – maintenance payments." 20 C.F.R. §§ 416.1132(c)(1)-(5). Two of the aforementioned avenues are relevant in this case and discussed in more detail below: (1) liability for rental charges ("rental liability") and (2) pro rata sharing of household and operating expenses.

### i. Rental Liability as Basis for "Own Household"

Whether an individual has liability for rent sufficient to establish his "own household" is governed by the Social Security Administration's *Program Operations Manual System* ("POMS"), "a policy and procedure manual that employees of the Department of Health [and] Human Services use in evaluating Social Security claims." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). Pursuant to the POMS, an individual is determined to have "rental liability" if he lives in a "separate household from the landlord's." POMS SI 00835.120(A)(4). The POMS further define a "separate household" as a "separate economic unit," which functions independently. *Id.* "If the individual and the landlord do not function as separate economic units, the individual is not in a separate household" and cannot rely on his "rental liability" to establish that he lives in his "own household." *Id.*

The Commissioner considers four factors to determine whether separate households exist within one dwelling. POMS SI 00835.120(E)(1)(c). First, the household organization is examined. Do the claimant and the landlord "make joint decisions regarding home repairs, improvements, and other aspects of daily activities?" *Id.* Is the "individual responsible for any bills connected with the operation of the residence?" *Id.* Do the claimant and the landlord "pool money for any household expenses?" *Id.* An answer in the affirmative to these questions may indicate that the claimant and the landlord do not function independently. *Id.* Second, the rent requirements are considered. Is the rent "based on the current market value?" *Id.* If the claimant stopped paying rent, would he be evicted or liable for back rent? *Id.* An answer in the affirmative to these questions tends to establish that the claimant is functioning as a "separate

economic unit." *Id.* Third, the eating arrangements are evaluated. Does the claimant purchase, store, prepare, or eat his food "separately from the rest of the household?" *Id.* If so, this indicates that the claimant may be in a "separate household." *Id.* Fourth and finally, access to the premises is considered. Does the claimant "have access to only part of the residence?" *Id.* Does the claimant "have a bedroom, cooking facilities, or a bathroom for his/her exclusive use?" *Id.* If so, the claimant may be functioning as a "separate economic unit." In this analysis, "[n]o single factor is controlling" and the Commissioner's "determination must be based on … all of the facts in the case." *Id.*

If the claimant establishes that he has "rental liability" as construed by the POMS, then he lives in his "own household" and the presumed value rule, rather than the one-third reduction rule, would apply. After finding that a claimant has "rental liability," the Commissioner then considers whether a parent-child relationship exists between the tenant and the landlord and whether the claimant is receiving a "rental subsidy." POMS SI 00835.380. "An individual receives in-kind support and maintenance in the form of a rental subsidy when the required rent … is less than the amount charged under a business arrangement." POMS SI 00835.380(B)(6). The POMS parrot the regulations and establish that, in most states,[7] a "business arrangement exists when the monthly required rent … equals the [current market rental value] of the residence." POMS SI 00835.380(B)(7); *see also* 20 C.F.R. § 416.1130(b). If the claimant is receiving a "rental subsidy," the difference between the current market value and the rent actually paid is

---

[7] As explained above, whether a "business arrangement" exists varies depending on the state in which the claimant lives – with one rule applying in Connecticut, New York, Vermont, Illinois, Indiana, Wisconsin, and Texas, and another rule applying everywhere else. POMS SI 00835.380(B)(7). Under those states' rule, if an SSI recipient's monthly rent exceeds the presumed value, the Commissioner will not impute the difference between the recipient's rent and the current market value as "unearned income" for determining SSI eligibility. *See infra* note 9.

treated as in-kind/unearned income attributable to the SSI recipient.  *Id.*  Accordingly, as interpreted by the Commissioner, the "business arrangement" exception in 20 C.F.R. § 416.1130(b) is relevant only if the presumed value rule applies; it is not considered if the claimant does not have "rental liability" and the one-third reduction rule applies.  POMS SI 00835.380(A).

### ii.  Pro-Rata Sharing as Basis for "Own Household"

A claimant can also establish that he lives in his "own household" if he pays "at least a pro rata share of household and operating expenses."  20 C.F.R. § 416.1132(c)(4).  "Household operating expenses are the household's total monthly expenditures for food, rent, mortgage, property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection service."  20 C.F.R. § 416.1133(c).  To determine if a claimant pays at least a pro rata share of the household operating expenses, the Commissioner "average[s] the monthly household operating expenses" and divides that sum by "the number of people in the household, regardless of age."  20 C.F.R. § 416.1133(b).  If a claimant's "contribution equals or exceeds his or her pro rata share of household operating expenses, provided the household expenses include both food and shelter," the claimant "is not subject to the" one-third reduction rule.  POMS SI 00835.160(A).  Instead, the presumed value rule applies.

### B.  The Commissioner's Application of the One-Third Reduction Rule

Because the Plaintiff's application for SSI was granted, ALJ Jackson's decision focused on one issue: "if the one-third reduction rule applies to benefits paid to the [Plaintiff] due to in-kind support and maintenance."  (Tr. 13).  The Plaintiff urged the ALJ to find that the one-third reduction rule does not apply to him because he has established

that he lives in his "own household by virtue of" his "rental liability that is equal to the presumed maximum value." *Id.* In addition, the Plaintiff claimed that the "application of the one-third reduction rule is unfair, discriminatory, and unconstitutional." *Id.*

The ALJ acknowledged that the Plaintiff had entered into a lease agreement with his guardian/mother and his father in January 2014. (Tr. 14). Pursuant to the lease, the Plaintiff "agreed to monthly payments equal to SSA presumed maximum value, or $260.34 in 'rent,' divided equally between his parents, as the [Plaintiff] alternates weekly residence each month between" his parents' homes. *Id.* As a tenant, the Plaintiff "has access to one individual bedroom in the two residences, with shared access to the remainder of the houses and lots." *Id.* In addition to paying rent, the Plaintiff "'paid' an average of $130.17 toward 'household expenses' monthly for each residence, not specifically for food or shelter only." *Id.*

However, the ALJ ultimately found that "application of the one-third reduction rule [was] appropriate … as the [Plaintiff] has not established that he is living in his own household" because "he does not have rental liability." (Tr. 15). Pursuant to POMS SI 00835.120, the ALJ considered the four factors for "rental liability": (1) household organization, (2) rent requirements, (3) eating arrangements, and (4) access to premises, and determined that the Plaintiff did not have "rental liability" that could support a conclusion that he lived in his "own household." *Id.* Specifically, the ALJ made the following factual findings:

> There are no separate utilities, groceries are purchased for the entire household and he shares bathroom, cooking and dining facilities. He is not expected to contribute to household repairs. Even if the claimant could not pay "rent," he would not be evicted. Bank account information documents monthly debits from the claimant's account generally consistent with the amounts reported above but also other withdrawals in lesser and much

> greater amounts with no further explanation (*i.e.* up to $500 for "bill pay"). This suggests a combination of funds, indicating the claimant was not in a separate household within either dwelling, making the one-third reduction rule applicable.

*Id.* (internal citations omitted). The ALJ also noted that the Plaintiff's "contribution of presumed maximum value does not equal his 'share' of household expenses," ruling out pro-rata sharing as a basis for establishing that he lives in his "own household." *Id.* Accordingly, the ALJ concluded that "application of the one-third reduction rule [was] appropriate" and determined that the Plaintiff was "entitled to monthly supplemental security income benefits as determined by statute minus one-third of the benefit amount due to in-kind support and maintenance." (Tr. 15-16).

### C.   Standards of Review

The Administrative Procedure Act establishes the scope of judicial review of an agency action. *See* 5 U.S.C. § 706. Typically, judicial review of the Commissioner's decision is restricted to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007) (internal quotation marks and citations omitted). In this case, the Commissioner's decision involved both factual findings and legal determinations. Accordingly, the Court will separately review each part of the Commissioner's decision, outlining the appropriate standard of review and then examining the Plaintiff's argument with respect to that particular agency action.

## III.   ANALYSIS

### A. *Substantial evidence supports the Commissioner's application of the one-third reduction rule.*

When reviewing factual findings, the Court must determine if the Commissioner's

decision is supported by substantial evidence. 5 U.S.C. § 706(2)(E). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996). Therefore, ALJ Jackson's factual findings must be affirmed if they are supported by substantial evidence.

The Plaintiff does not directly challenge the ALJ's factual finding that he did not live in his "own household." However, an examination of the four "rental liability" factors reveals that the ALJ's decision is supported by substantial evidence. Each factor weighs in favor of finding that the Plaintiff was not functioning independently as a "separate economic unit" and thus, did not live in his "own household." Accordingly, the ALJ's conclusion that the Plaintiff did not have "rental liability" is supported by substantial evidence.

In addition to performing the proper "rental liability" analysis and making factual findings supported by substantial evidence, the ALJ made several errant remarks, which the Plaintiff takes issue with. First, the ALJ discussed the Plaintiff's lease agreement and suggested that the arrangement was disingenuous:

> Although the lease was reportedly established in January 2014, receipts provided in July 2015 reveal the claimant paid $130.17 per month classified as "rent" and $50 per month for "food" to each household beginning in **November 2014**, with the "rent" amount changing to $132.17 in January 2015 based on the cost-of-living increase in the monthly benefit. The undersigned concludes that if the lease agreement was genuine, then the amounts paid noted as "household expenses" beginning in January 2014 should have been termed "rent" with accompanying receipts to show as much. However, the undersigned notes the lease agreement was not notarized and the amount of "rent" conveniently matches the amount the claimant's benefits were reduced. The undersigned also notes inconsistency in the dates and number sequence of checks listed on the receipts. It appears from bank statements, the claimant paid "rent" and "expenses" twice in May 2015; such discrepancies cast doubt on the authenticity of the arrangement.

(Tr. 15) (internal citations omitted). The Plaintiff challenges this particular portion of the ALJ's decision, claiming that the ALJ's "speculation and innuendo is unsupported by anything resembling substantial evidence." (Doc. # 10-1 at 12).

Finally, despite holding that the one-third reduction rule applied, the ALJ appears to have made an unnecessary, alternative holding under the presumed value rule:

> In accordance with 20 CFR 416.1130(b) and POMS SI 00835.300, the lease is also not a "business arrangement." The representative acknowledged there is no rental subsidy, as his "rent" is equal to the presumed value.

(Tr. 15) (internal citations omitted).

The Court finds several issues with the ALJ's statements casting doubt on the Plaintiff's lease agreement, as well as her alternative holding under the presumed value rule. However, ALJ Jackson's errant remarks regarding the authenticity of Plaintiff's lease

agreement and her incomplete and incorrect alternative holding under the presumed value rule, while error, were harmless in this case. Neither error affects the ALJ's correct conclusion with respect to the Plaintiff's "rental liability" or the proper application of the one-third reduction rule. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("No principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

The ALJ relied on the appropriate factors to determine that the Plaintiff failed to establish his "own household," not on the authenticity of the lease agreement. In fact, the POMS indicate that the existence of a lease, whether genuine or not, is not in itself sufficient to establish "rental liability." *See* POMS SI 00835.120(D). The claimant's rent requirements are but one of the four "rental liability" factors. Even when there is a lease agreement, the Commissioner must consider whether the rent equals fair market value and whether there are consequences (*i.e.* eviction and back rent) for failure to pay rent. In this case, the Plaintiff's rent did not equal fair market value, nor were there consequences for failure to pay his rent. Accordingly, each of the four factors, including the rent requirements factor, weighed against a finding that the Plaintiff lived in his "own household." While the rent requirements factor may speak to the legitimacy of a lease, the ALJ's decision was not premised upon the authenticity of the Plaintiff's lease agreement with his landlord-parents. Therefore, the ALJ's statements casting doubt on the genuineness of the lease agreement, even if unsupported by substantial evidence, do not warrant reversal.

Similarly, the ALJ's alternative holding, which appears to be based on the presumed value rule, does not require reversal or remand. For completeness, the Court notes that the ALJ's business agreement and rental subsidy conclusions are puzzling. First, the ALJ finds that Plaintiff's lease does not qualify as a "business arrangement." (Tr. 15). That conclusion is consistent with the dictates of 20 C.F.R. § 416.1130(b), which provide that in Kentucky a "business arrangement exists when the amount of monthly rent required to be paid equals the current market rental value." *See also* POMS SI 00835.380(B)(7).[8] However, the ALJ then stated that there was "no rental subsidy, as [Plaintiff's] 'rent' is equal to the presumed value." (Tr. 15). That assertion is inconsistent with POMS SI 00835.380(B)(6), which provides that a rental subsidy exists when "the required rent … is less than the amount charged under a business arrangement." If, in Kentucky, a business arrangement exists when the rent equals the current market rental value, but the Plaintiff's rent (although equaling the presumed value) falls below the current market rental value, then a rental subsidy would exist. Nevertheless, the ALJ did not apply the presumed value rule, and therefore, an incorrect conclusion that a rental subsidy did not exist does not impact the ALJ's proper application of the one-third reduction rule.

"It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). However, courts "review decisions of administrative agencies for harmless error." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (citing *Heston v.*

---

[8]    The Plaintiff's constitutional arguments based on the application of different rules to citizens of different states will be discussed later in this Memorandum Opinion and Order. *See infra* p. 25-27.

*Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir, 2001); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality")). Therefore, even when "an agency has failed to adhere to its own procedures," a court should "not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers*, 582 F.3d at 645 (internal quotation marks and citations omitted).

In this case, the Plaintiff has not been prejudiced on the merits or deprived of substantial rights because of the ALJ's errant remarks regarding the authenticity of his lease agreement or the incomplete and incorrect alternative holding under the presumed value rule. Therefore, those errors are harmless and remand would be an idle and useless formality. Accordingly, the ALJ's decision that the one-third reduction rule applied is supported by substantial evidence and reversal is unwarranted.

**B. *The Commissioner's statutory and regulatory interpretations are entitled to deference.***

"If, as here, the [Commissioner's] decision depends in part on the construction of" a statute or regulation, the Court must "determine what level of deference to afford the [Commissioner's] construction and then whether the [Commissioner] exceeded her statutory authority." *Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560, 566 (6th Cir. 2014).

"[A]gencies charged with applying a statute necessarily make all sorts of interpretive choices, and while not all of those choices bind judges to follow them, they

certainly may influence courts facing questions the agencies have already answered."
*United States v. Mead Corp.*, 533 U.S. 218, 228 (2001). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Id.* at 228. This "approach has produced a spectrum of judicial responses, from great respect at one end … to near indifference at the other." *Id.* (internal quotation marks and citations omitted).

### 1. Statutory Interpretation

When the Commissioner's interpretation "involves a question of statutory interpretation," the Court applies the rule of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984), "rather than the less-deferential rule of" *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Id. Chevron* and its progeny "provide a two-step framework to resolve questions of statutory construction when they arise in the administrative context." *Id.* (citing 5 U.S.C. §§ 706(2)(A), (C)). First, the Court must determine whether "Congress has directly spoken on the precise question at issue." *Chevron*, 467 U.S. at 842. "If the court can discern 'the unambiguously expressed intent of Congress,' then that construction of the statute controls." *Atrium Med. Ctr.*, 766 F.3d at 566 (quoting *Chevron*, 467 U.S. at 843). In other words, if the statute is clear, a court must apply the statute as written and an agency interpretation to the contrary must be rejected.

However, if the statute is ambiguous, a court is required to "determine whether Congress has either expressly or implicitly delegated authority to the agency to fill the

gap – that is, to 'elucidate a specific provision of the statute by regulation.'" *Id.* (quoting *Chevron*, 467 U.S. at 843-44). "If the delegation is express, the agency's 'legislative regulations' made pursuant to that delegation 'are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 844). "If, however, the delegation is implicit, the court's review is somewhat less deferential: 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the Administrator of an agency.'" *Id.* (quoting *Chevron*, 467 U.S. at 844).

"But *Chevron* only applies if 'Congress delegated authority to the agency generally to make rules carrying the force of law' and the agency interpretation was 'promulgated in the exercise of that authority.'" *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)). "The interpretation merits less deference if the agency's action was not promulgated in the exercise of that authority and was simply another kind of 'interpretive choice' that an agency must 'necessarily make' when applying a statute." *Id.* at 566-567 (quoting *Mead*, 533 U.S. at 227–28). "Generally, 'interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law' and were not promulgated via notice and comment rulemaking, 'do not warrant *Chevron*-style deference.'" *Id.* at 567 (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *Mead*, 533 U.S. at 234). "Rather, such interpretations are normally 'entitled to respect ... but only to the extent that [they] have the 'power to persuade.'" *Id.* (quoting *Christensen*, 529 U.S. at 587). "In deciding whether the Secretary's interpretation is persuasive, we look to the statute's text and design, including whether the regulation is consistent with congressional purpose." *S. Rehab. Grp., P.L.L.C. v. Sec'y*

*of Health & Human Servs.*, 732 F.3d 670, 685 (6th Cir.2013) (internal citations and quotation marks omitted).

## 2. Regulatory Interpretation

Review of an agency's interpretation of its own regulations is governed by *Auer v. Robbins*, 519 U.S. 452 (1997). However, "*Auer* deference is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris Cty.*, 529 U.S. 579, 588 (2000). If the regulation is not ambiguous, "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation to create *de facto* a new regulation." *Id.* at 588. Therefore, if "the regulation is not ambiguous" on the specific issue, "*Auer* deference is unwarranted." *Id.*

On the other hand, if the regulation is ambiguous, *Auer* deference is afforded to the agency's interpretation, and the Court must be "especially deferential: the agency's interpretation is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Atrium Med. Ctr.*, 766 F.3d at 567 (quoting *Auer*, 519 U.S. at 461). Thus, the Court must "grant an agency's interpretation of its own [ambiguous] regulations considerable legal leeway." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (citing *Auer*, 519 U.S. at 461).

## 3. The Commissioner's interpretations are entitled to deference.

Although neither party directly addresses what level of deference should be afforded to the Commissioner's actions, the Plaintiff claims that he is "challenging the propriety and constitutionality" of the Commissioner's rules, as opposed to their application. (Doc. # 18 at 10). Therefore, the Plaintiff's arguments require analysis under *Chevron* and *Auer*.

The Plaintiff advances several arguments regarding the propriety of the Commissioner's rules. First, the Plaintiff claims that the Commissioner's imputation of rental subsidy income to SSI beneficiaries whose rent payments equal or exceed the presumed value is the product of an "economically indefensible fiction." (Doc. # 10-1 at 13). Specifically, the Plaintiff argues that imputing income and applying the one-third reduction rule in this case "ignores and contradicts [the SSA's] basic regulations requiring, as a condition of imputation, the actual availability of income to meet basic needs." *Id.* at 14.

The Plaintiff's arguments are plagued by a square-peg-round-hole problem. The Plaintiff claims that imputation of rental subsidy income to SSI recipients, like him, who pay rent equal to the presumed value, contradicts other regulations. However, the Commissioner did not impute rental subsidy income to the Plaintiff. As interpreted by the Commissioner, "rental subsidies" and the "business agreement" exception only come into play if the presumed value rule applies. *See* POMS SI 00835.380(A). The Plaintiff failed to establish that he lived in his "own household," and therefore was subject to the one-third reduction rule, *not* the presumed value rule.

Accordingly, the cases from the Seventh Circuit, Second Circuit, and the Eastern District of Virginia that the Plaintiff attempts to rely on are inapposite.[9] Each of those

---

[9]     As mentioned throughout this opinion, the "business arrangement" exception is defined and applied differently in certain states. These cases are the reason why.

In *Jackson*, the Seventh Circuit held that "the Secretary's interpretation of his regulation governing the imputation of unearned income ignores and contradicts the Secretary's basic regulations requiring, as a condition of imputation, the actual availability of income to meet basic needs." *Jackson v. Schweiker*, 683 F.2d 1076, 1086 (7th Cir. 1982). In so holding, the Seventh Circuit determined that unearned income in the form of a rental subsidy may be attributable to an SSI recipient only if that unearned income is "actually available" to meet the recipient's basic needs." *Id.* Therefore, the Seventh Circuit directed the Secretary "either to amend the challenged regulation or to change his application of, and procedure under, the regulation." *Id.* In accordance

cases considered the imputation of "unearned income" in the form of a "rental subsidy," under the presumed value rule.[10] Thus, those recipient-plaintiffs must have established that they lived in their "own household," or that they were not receiving both in-kind food and shelter. This critical fact easily distinguishes the Plaintiff's case because he has not established either. Therefore, the Plaintiff's attempts to "tee up" that exact same "issue in [this] litigation" were to no avail. (Doc. # 18 at 9).

Because the Plaintiff's benefits were reduced under the one-third reduction rule, there are only two reasonable articulations of his arguments: (1) that the "business agreement" exception should be expanded and applied to the one-third reduction rule, or (2) that the existence of a lease agreement, which requires rent equal to the presumed

---

with that ruling, the Commissioner amended the regulation. *See* 20 C.F.R. § 416.1130(b) (creating an exception "[i]n the States in the Seventh Circuit (Illinois, Indiana, and Wisconsin).")

Similarly, in *Ruppert*, the Second Circuit adopted the economic rationale of *Jackson* and held that "if the proportion of income that [SSI recipients] expend on shelter is so great that 'it flies in the face of reality to conclude that unearned income in the form of subsidized shelter … is actually available to the recipient, the unearned income should be disregarded.'" *Ruppert v. Bowen*, 871 F.2d 1172, 1180 (2d Cir. 1989) (quoting *Jackson*, 683 F.2d at 1085). The Commissioner acknowledged this ruling as well. *See* POMS SI 00835.380(B)(7) (expanding the exception to the States in the Second Circuit: Connecticut, New York, and Vermont); *see also* Social Security Acquiescence Ruling 90-2(2), 55 Fed. Reg. 28,947, 28, 949 (Jul. 16, 1990).

As a result of a class action suit filed in the Northern District of Texas, the Commissioner "agreed to revise its rental subsidy policy as it applied to residents of the State of Texas" and apply the same rule as in the Seventh and Second Circuits. *See* SI DAL0008353.380 ("Rental Subsidies for Residents of Texas Effective May 1, 1996"); *see also Diaz v. Chater*, Civil No. 3:95-cv-1817 (N.D. Tex. 1995).

The Eastern District of Virginia joined the Seventh and Second Circuits and held that the Commissioner cannot impute unearned income in the form of a rental subsidy unless the SSI recipient receives "an actual economic benefit from the unearned income." *Ragsdale v. Apfel*, 999 F. Supp. 814, 823 (E.D. Va. 1998). In doing so, the district court took the Commissioner to task for failing to "seek review of the decisions issued by the Second or Seventh Circuits." *Id.* However, the Commissioner did not appeal this decision and did not issue an Acquiescence Ruling for residents in the Eastern District of Virginia. Therefore, the alternative iteration of the presumed value rule has not been extended to Virginia.

[10] The Court notes that in *Ruppert*, the Second Circuit considered two plaintiffs, Jaqueline and Thomas Ferguson, who were subject to the one-third reduction rule. However, the Second Circuit did not find that its new "actual economic benefit" rule for "rental subsidies" required a remand in the Fergusons' case. *Ruppert*, 871 F.2d at 1180 ("This requires a remand in the cases of Alan Green, Cheryl Karnett, and Edward and Rose Faicco.").

value, should be dispositive of the "rental liability" analysis and sufficient to establish that a claimant lives in his "own household." These arguments take issue with the regulations, as well as the interpretation of those regulations. Therefore, the Court will first consider the propriety of the regulations under *Chevron*, and then the Commissioner's interpretations under *Auer*.

Congress has not explicitly addressed the question of whether a SSI recipient, who is required to pay rent under a lease, can be imputed "unearned income" in the form of in-kind support and maintenance. Nor has Congress defined the term "living in another person's household." Although Congress established that "unearned income" includes in-kind support and maintenance, it has been left to the Commissioner to further define in-kind support and maintenance and implement the valuation methods. 42 U.S.C. § 1382a(a)(2). Therefore, the statute is ambiguous on these particular issues, and the regulations that establish the valuation methods and the requirements for implementing those rules are entitled to *Chevron* deference.

Accordingly, so long as the regulations are not "arbitrary, capricious, or manifestly contrary to" 42 U.S.C. § 1382a(a)(2), the Commissioner is permitted to determine what constitutes in-kind support and maintenance; define what "living in another person's household" and "rental liability" means; establish and define the boundaries of the "business arrangement" exception; and determine what effect, if any, rent payments a recipient makes under a lease will have on their benefits. In each of the regulations at issue, the Commissioner's statutory interpretation is reasonable and "satisfies [*Chevron*'s] modest standard."[11]  *Henry Ford Health Sys. v. Dep't of Health & Human*

---

[11]     To the extent the Plaintiff takes issue with the Commissioner's refusal to expand and apply the "business agreement" exception to the one-third reduction rule, or promulgate a similar rule

*Servs.*, 654 F.3d 660, 666 (6th Cir. 2011).

In this case, ALJ Jackson directly relied on POMS SI 00835.120 in her decision. "Although the POMS is a policy and procedure manual that employees of the Department of Health [and] Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive." *Davis*, 864 F.2d at 340 (citing *Evelyn v. Schweiker*, 685 F.2d 351 (9th Cir. 1982)). "The POMS explains the meaning of Social Security Act terms as well as the meaning intended by terms appearing within the regulations." *Id.* (citing *Powderly v. Schweiker*, 704 F.2d 1098 (9th Cir. 1983)). Therefore, the Court must also consider whether the Commissioner's interpretation of the regulations, as evidenced in the POMS, are entitled to *Auer* deference.

The Plaintiff's arguments directly challenge the Commissioner's interpretation of two regulations: 20 C.F.R. § 416.1130(b)'s "business arrangement" exception and 20 C.F.R. § 416.1132(c)(2)'s "rental liability" basis. Both of these regulations are ambiguous with respect to the specific issues. First, 20 C.F.R. § 416.1130(b) only defines a "business arrangement," it does not establish the boundaries of the "business arrangement" exception. And second, 20 C.F.R. § 416.1132(c)(2) simply establishes rental liability as a basis for establishing that a claimant lives in his "own household," it does not define "rental liability."

Thus, *Auer* deference is afforded to the Commissioner's interpretations, and the Court must be "especially deferential: the agency's interpretation is 'controlling unless

---

which provides that a claimant making rental payments equal to the presumed value has established that he lives in his "own household," those arguments are perilously close to a refusal-to-promulgate argument. An agency's "[r]efusals to promulgate rules are … susceptible to judicial review, though such review is 'extremely limited' and 'highly deferential.'" *Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) (quoting *Nat'l Customs Brokers & Forwarders Assn. of Am., Inc. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)).

plainly erroneous or inconsistent with the regulation.'" *Atrium Med. Ctr.*, 766 F.3d at 567

(quoting *Auer*, 519 U.S. at 461). The Commissioner's interpretations of 20 C.F.R. §

416.1130(b) and 20 C.F.R. § 416.1132(c)(2) are not plainly erroneous or inconsistent with

the regulations.[12] Therefore, the Commissioner's interpretations are controlling, and the

Court declines to disturb them.

     **C.**     ***The Commissioner's application of the one-third reduction rule was***
***not arbitrary and capricious.***

    "Even if an agency's statutory or regulatory interpretation is permissible" under

*Chevron*, *Skidmore*, or *Auer*, "the agency's action may still be 'arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law.'" *Atrium Med. Ctr.*, 766 F.3d

at 567 (quoting 5 U.S.C. § 706(2)(A)). "Not only must an agency's decreed result be

within the scope of its lawful authority but the process by which it reaches that result must

be logical and rational." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374

(1998). Arbitrary and capricious review "ensur[es] that agencies have engaged in

reasoned decision making." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). However, the

scope of review is "narrow" and the Court will "uphold a decision of less than ideal clarity

if the agency's path may reasonably be discerned." *Motor Vehicle Mfr. Ass'n of U.S. v.*

---

[12]     The Plaintiff also complains that the Social Security Administration's "written policies …
have functionally drawn a line through [20 C.F.R. § 416.1132(c)(2) – the "rental liability" section]
and have collapsed everything within a different subsection," 20 C.F.R. § 416.1132(c)(4) – the
pro rata sharing section. (Doc. # 18 at 3, n.3). First, the Court disagrees with the Plaintiff's
characterization of the Commissioner's interpretation. The "rental liability" and "pro rata sharing"
bases are the subject of different regulations, separate POMS, and represent different stages of
the Commissioner's sequential analysis. *See* 20 C.F.R. § 416.1133; *see also* POMS SI
00835.001(B); POMS SI 00835.120; POMS SI 00835.160. Even assuming *arguendo* that the
Commissioner's interpretation does collapse the subsections, that interpretation would not be
plainly erroneous or inconsistent with the regulations. Section 416.1132 simply lists a claimant's
options for establishing that he lives in his "own household," it does not define those terms or
explain their requirements.

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In this case, the Commissioner has easily satisfied this standard. The Commissioner has interpreted the "business arrangement" and "rental subsidy" issues to arise only under the presumed value rule. The Court can reasonably discern the Commissioner's path to that decision – under the one-third reduction rule, a recipient's benefits are automatically reduced by one-third, rather than the actual value of the in-kind support and maintenance received. That "presumption apparently is that the amount represented by one-third of the maximum payable SSI benefit represents a normal budget for food and shelter." *Jackson*, 683 F.2d at 1080 n.6. Therefore, the amount of rent paid, and relatedly, the specific amount the claimant's rent is "subsidized," is meaningless unless the Commissioner is applying the presumed value rule, and calculating and imputing that amount.[13]

Moreover, the Commissioner did not rely "on factors which Congress has not intended it to consider," fail "to consider an important aspect of the problem," offer "an explanation for its decision that runs counter to the evidence", nor is the Commissioner's decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. Accordingly, the Commissioner's application of the one-third reduction rule to the Plaintiff's benefits is neither arbitrary nor capricious.

---

[13] If this Court had been presented with a case where the Commissioner imputed rental subsidy income to the Plaintiff, without proof that the Plaintiff received "an actual economic benefit from the unearned income," the Court may have been willing to consider whether the "absurd position of the Agency [was] an arbitrary and capricious exercise of the Agency's powers," as other courts have suggested. *Ragsdale*, 999 F. Supp. 819 n.8. However, that case is not before the Court.

**D.** *The Plaintiff's constitutional claims fail.*

Judicial review of the Commissioner's actions, findings, and conclusions includes determining the constitutionality of the Commissioner's conduct. 5 U.S.C. § 706(2)(B). Constitutional claims are outside the Commissioner's competence and expertise; therefore, an "agency's interpretation" is given deference only if the interpretation "does not violate the Constitution." *Stinson v. United States*, 508 U.S. 36, 45 (1993).

The Plaintiff's constitutional arguments hinge on the Commissioner's application of one iteration of the presumed value rule to SSI recipients in Connecticut, New York, Vermont, Illinois, Indiana, Wisconsin, and Texas, while another version of the presumed value rule applies to SSI recipients residing everywhere else. Specifically, the Plaintiff claims that the Commissioner's decision, and specifically the "disparate treatment of [SSI] beneficiaries in different jurisdictions … violates both the Equal Protection Clause and the Privileges and Immunities Clause." (Doc. # 18 at 4).

However, the Plaintiff's constitutional arguments suffer from the same fatal flaw as his other arguments: this rule – albeit applied differently among citizens of different states – was not applied to the Plaintiff. Thus, the Plaintiff does not have standing to make bring these constitutional claims.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Specifically, the "irreducible constitutional minimum of standing contains three requirements: (1) injury in fact, (2) causation, and (3) redressability." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998)). Even assuming the Plaintiff has an "injury in fact,"

the Plaintiff cannot prove that his "injury is fairly traceable to the defendant's allegedly unlawful conduct" or that his injury is "likely to be redressed by the requested relief." *Kardules v. City of Columbus*, 95 F.3d 1335, 1352 (6th Cir. 1996) (internal quotation marks and citations omitted). Because the Plaintiff's benefits were reduced pursuant to the one-third reduction rule, he is in no position to pursue constitutional claims premised on the allegedly unconstitutional application of the presumed value rule. Accordingly, this case is not the appropriate vehicle for addressing those constitutional arguments, and the Court declines to do so.

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that the one third reduction of Plaintiff's benefits was appropriate in this case was supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 10) is **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 15) is **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 5th day of June, 2017.



Signed By:
*David L. Bunning*
United States District Judge